IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ESTATE OF MICHAEL DEMPSEY by and through its Personal Representative, ELLEN SMITH, and ELLEN SMITH, | ) ) ) ) | No. 34573-4-III |
| Petitioners, | ) ) | |
| v. | ) ) | |
| Spokane Washington Hospital Company LLC d/b/a DEACONESS MEDICAL CENTER, ROCKWOOD CLINIC and Michael Wukelic, M.D., | ) ) ) ) ) | PUBLISHED OPINION |
| Respondents, | ) ) | |
| APOGEE PHYSICIANS a.k.a. Apogee Medical Group, Washington, P.C., | ) ) ) | |
| Defendant. | ) | |

LAWRENCE-BERREY, J. —Two issues are before us. The first issue is whether an attorney may assert attorney work product protections over documents the attorney prepared and sent to a testifying expert. We answer that the attorney may, but that attorney work product protections are waived to the extent the attorney provided facts to the testifying expert to serve as the bases for that expert's opinions. The second issue

concerns whether a testifying expert's draft opinions are discoverable or whether they are protected by expert witness work product protections. We answer that draft opinions are subject to testifying expert work product protections and are not discoverable.

We reverse the trial court's order and remand to the special discovery master for an in camera review consistent with this opinion.

## PROCEDURE

In 2014, Ellen Smith, both personally and as personal representative for the Estate of Michael Dempsey, filed suit alleging medical negligence against Deaconess, Rockwood Clinic, and Dr. Michael Wukelic. In late 2015, the trial court appointed a special discovery master to hear and rule on discovery disputes.

The plaintiffs retained medical expert Dr. Steven Simons to testify on their behalf at trial. Counsel for Dr. Wukelic issued a subpoena duces tecum to Dr. Simons. The subpoena duces tecum requested Dr. Simons to produce for his deposition "[a]ll letters or correspondence, either written or electronic, whether received or sent by you, concerning Michael Dempsey which are not otherwise part of the record and chart." Clerk's Papers (CP) at 78. The request specifically included production of any and all records received from any source, "including plaintiffs' counsel." *Id.* The subpoena duces tecum further demanded "[a]ny and all notes, memos, either written or electronic, which you have made

2

while performing work on this case. This is meant to include handwritten notes concerning conversations with . . . plaintiffs' counsel . . . ." *Id.*

Plaintiffs objected to the subpoena on multiple grounds, including work product. In turn, Dr. Wukelic filed a motion to compel production and to overrule the plaintiffs' objections. The plaintiffs responded with a countermotion, requesting the special discovery master to quash the subpoena as prohibitively broad. Prior to filing their motions, the parties did not engage in a CR 26(i) conference.

The special discovery master issued an order requiring plaintiffs to provide him all documents sought by Dr. Wukelic that were not previously disclosed so he could review the documents in camera. In addition, the special discovery master ordered plaintiffs to submit to him a privilege log describing those documents they contend are privileged together with a description of the privilege asserted. Although the order appeared to protect privileged documents from disclosure, the order itself stated that no privileges were available to plaintiffs. In the order, the special discovery master found:

> [T]here is no attorney-client privilege between plaintiffs' counsel and Dr. Simons that would protect from disclosure documents . . . exchanged between plaintiffs' counsel and Dr. Simons, and that plaintiffs' claim of a "work product" privilege protecting communications between plaintiffs' counsel and Dr. Simons is inapplicable in that Dr. Simons is a testifying expert.

No. 34573-4-III
*In re Estate of Dempsey*

CP at 189.

Plaintiffs sought review by the trial court of the special discovery master's order.

The trial court affirmed the special discovery master's order. Plaintiffs then requested

discretionary review, and a panel of this court granted their request.

## LAW AND ANALYSIS

This court reviews a trial court's ruling on a discovery motion for an abuse of

discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299,

339-40, 858 P.2d 1054 (1993). "A trial court abuses its discretion when its order is

manifestly unreasonable or based on untenable grounds." *Id.* at 339. "A trial court would

necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *Id.*

A.   FEDERAL INTERPRETATIONS OF WORK PRODUCT PROTECTIONS DO NOT GUIDE OUR
     DECISION

Both parties urge us to be guided by federal interpretations of work product

protections under FED. R. CIV. P. 26(b)(4). FED. R. CIV. P. 26(b)(4)(B)[1] explicitly

protects draft reports of testifying expert witnesses from disclosure. FED. R. CIV. P.

---

[1] FED. R. CIV. P. 26(b)(4)(B) provides: *"Trial-Preparation Protection for Draft Reports or Disclosures.* Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded."

4

26(b)(4)(C)[2] explicitly protects some disclosures of attorney work product sent to a testifying expert witness. We reject the parties' requests to be guided by federal interpretations.

Where a state rule parallels a federal rule, analysis of the federal rule may be looked to for guidance in interpreting the state rule. *Beal v. City of Seattle*, 134 Wn.2d 769, 777, 954 P.2d 237 (1998). But "[a]ny party asking us to adopt the federal interpretation of a rule bears the burden of overcoming our reluctance to reform rules practice through judicial interpretation rather than rule making." *Washburn v. City of Federal Way*, 178 Wn.2d 732, 750, 310 P.3d 1275 (2013).

Nothing in CR 26(b) is similar to the explicit work product protections found in the federal rules. For us to adopt federal interpretations of the federal civil rules, we

[2] FED. R. CIV. P. 26(b)(4)(C) provides: *"Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.* Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed."

No. 34573-4-III
*In re Estate of Dempsey*

would be reforming our rule practice through judicial interpretation rather than rule

making. We refuse to do this.[3]

B.    CR 26(b)(4) APPLIES TO ATTORNEY WORK PRODUCT IN THE POSSESSION OF A
TESTIFYING EXPERT

We first review the mechanism by which the civil rules permit one party to request

documents from another party's expert witness and the mechanism by which an objection

may be lodged. CR 26(b) provides:

> (5) *Trial Preparation: Experts.* Discovery of facts known and
> opinions held by experts, otherwise discoverable under the provisions of
> subsection (b)(1) of this rule and acquired or developed in anticipation of
> litigation or for trial, may be obtained only as follows:
> (A)(i) A party may through interrogatories require any other party to
> identify each person whom the other party expects to call as an expert
> witness at trial, to state the subject matter on which the expert is expected to
> testify, to state the substance of the facts and opinions to which the expert is
> expected to testify and a summary of the grounds for each opinion, and to
> state such other information about the expert as may be discoverable under
> these rules. (ii) A party may, subject to the provisions of this rule and of
> rules 30 and 31, depose each person whom any other party expects to call as
> an expert witness at trial.

---

[3] To the extent the dissent asserts public policy arguments to reach a result
inconsistent with CR 26(b)(4) and CR 26(b)(5), the dissent would reform rule practice
through judicial interpretation rather than through rule making.

CR 30 governs depositions on oral examination, and CR 31 governs depositions on written questions. Nothing in those rules discuss the scope of a subpoena duces tecum issued to a testifying expert. We, therefore, look to other rules.

Under CR 45, an attorney of record may subpoena a nonparty to a deposition and require such person to produce documents. CR 45(a)(3)-(4). Any party opposing a subpoena may bring a motion to quash or modify the subpoena for various reasons, including if the subpoena "requires disclosure of privileged or other protected matter and no exception or waiver applies." CR 45(c)(3)(A)(iii). Here, plaintiffs contend that the subpoena requires disclosure of both attorney and expert witness work product.

We next briefly review how attorney work product protections arose and how those protections have been preserved in our state civil rules:

> The attorney work product doctrine first appears in *Hickman v. Taylor*[, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947)]. It is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries. The *Hickman* doctrine is now codified in [our] civil rules at . . . CR 26(b)(4).

*Soter v. Cowles Publ'g Co.*, 131 Wn. App. 882, 893, 130 P.3d 840 (2006) (footnote omitted) (internal quotation marks and citations omitted), *aff'd*, 162 Wn.2d 716, 174 P.3d 60 (2007).

CR 26(b)(4) provides in relevant part:

7

> *Trial Preparation: Materials.* Subject to the provisions of subsection (b)(5) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared . . . for trial by or for another party or by or for that other party's representative (including a party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of such party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

We note that CR 26(b)(5), not CR 26(b)(4), controls the scope of protections for an expert witness's work product. *In re Firestorm 1991*, 129 Wn.2d 130, 137, 916 P.2d 411 (1996). But to the extent an attorney seeks protection for his or her own work product, CR 26(b)(4) controls. *In re Det. of West*, 171 Wn.2d 383, 407, 256 P.3d 302 (2011).[4]

---

[4] The dissent fails to recognize that CR 26(b)(4) governs attorney work product while CR 26(b)(5) governs expert witness work product. The dissent's failure to recognize this allows it to conflate the two rules and declare that CR 26(b)(5) supersedes CR 26(b)(4). Not so.

A document prepared by an attorney is susceptible to attorney work product protection under CR 26(b)(4). Whereas a document prepared by an expert witness is susceptible to expert witness work product under CR 26(b)(5). It is, therefore, important to recognize whether a document is prepared by an attorney or by an expert witness when analyzing the differing protections under these rules. The dissent's failure to do this allows it to improperly conclude, based on CR 26(b)(5), that all attorney prepared documents provided to a testifying expert witness must be disclosed.

Dr. Wukelic is seeking documents that plaintiffs' counsel contends he prepared under CR 26(b)(4). However, Dr. Wukelic does not attempt to obtain disclosure of plaintiffs' work product under the stringent standards of CR 26(b)(4). Thus, Dr. Wukelic can only show entitlement to the materials under a theory of waiver.

C.     PLAINTIFFS PARTIALLY WAIVED ATTORNEY WORK PRODUCT PROTECTIONS

> "The doctrine of waiver ordinarily applies to all rights or privileges to which a person is legally entitled. A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right."

*Schroeder v. Excelsior Mgmt. Grp. LLC*, 177 Wn.2d 94, 106, 297 P.3d 677 (2013) (quoting *Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954)). We, therefore, inquire under what circumstances we may infer that an attorney who forwards work product documents to a testifying expert witness has relinquished work product protection.[5]

---

[5] Dr. Wukelic cites *In re Firestorm 1991*, 129 Wn.2d 130 and *Limstrom v. Ladenburg*, 110 Wn. App. 133, 39 P.3d 351 (2002) for the proposition that the attorney work product privilege is waived by sharing a protected document with a third person outside of the attorney-client privilege. We disagree.

*In re Firestorm* does not discuss waiver of the attorney work product privilege. *Limstrom* states the rule that an attorney's intentional disclosure of documents to an *adversary* generally results in a waiver of the work product privilege. *Id.* at 145. Here, plaintiffs' counsel did not disclose protected documents to an adversary.

It is common for an attorney to provide a testifying expert a written factual summary and supporting materials that serve as a foundation for the expert's trial testimony. The attorney anticipates that the expert witness will rely on these facts and to also testify that these facts are the bases of his or her opinions. Proper examination of the expert witness requires an opposing attorney to know the facts relied on by the expert witness. CR 26(b)(5)(A)(i) requires disclosure of these facts. But the disclosure by interrogatory answers often lacks factual detail. Because disclosure of such facts is required, it is consistent with our civil rules that the opposing attorney have a mechanism by which the factual details can be discovered. But more germane to the issue of waiver, because an attorney knows that disclosure of such facts to the opposing party is required by CR(b)(5)(A)(i), we may infer that the attorney relinquished attorney work product protections by intentionally submitting factual materials to a testifying expert.

The dissent asserts that the prevailing view under federal law, until the 2010 amendments to FED. R. CIV. P. 26, was that disclosure of attorney work product to a party's testifying expert worked a broader waiver than the rule we adopt here. We find this unremarkable, given that former FED. R. CIV. P. 26(a)(2)(B) (2007) explicitly required a party to disclose to an adverse party all "data or other information" considered by an expert. CR 26(b)(5)(A)(i) uses narrower language. It requires a party to disclosure

10

"the substance of the facts and the opinions to which the expert is expected to testify." The dissent explicitly chooses to ignore this difference and, by doing so, would achieve through judicial rule making what is not achievable through the rules themselves.

The dissent also submits a hypothetical letter from an attorney to a testifying expert. In that letter the attorney expresses his mental impressions, opinions, and legal theories, and then suggests what opinions the testifying expert should express. We agree with the dissent that the hypothetical letter should be disclosed, but we disagree on the legal basis for this result.

> Because [a] privilege sometimes results in the exclusion of evidence otherwise relevant and material, and may thus be contrary to the philosophy that justice can be achieved only with the fullest disclosure of the facts, [a] privilege is not absolute; rather, it is limited to the purpose for which it exists.

*Dietz v. Doe*, 131 Wn.2d 835, 843, 935 P.2d 611 (1997) (discussing the scope of the attorney-client privilege). An attorney's use of attorney work product terms and catchphrases in a letter to a testifying expert does not shield the letter from disclosure. In the case of the hypothetical letter, to the extent the letter seeks to improperly direct the expert's opinions, no purpose justifies extending work product protections to it.

11

We have not been provided the documents for which plaintiffs seek work product protection. We, therefore, are unable to definitively make a ruling. That ruling must be made in the first instance by the special discovery master.

In making its ruling, the special discovery master must determine which documents or portions thereof contain factual information for Dr. Simons to rely on in his testimony and which documents or portions thereof contain plaintiffs' counsel's mental impressions, conclusions, opinions, or legal theories. The latter type of disclosures are subject to heightened protection under CR 26(b)(4). *See Soter*, 131 Wn. App. at 893-94; *see also* Christa L. Klopfenstein, *Discoverability of Opinion Work Product Materials Provided to Testifying Experts*, 32 IND. L. REV. 481, 506-07 (1999) (endorsing a "protection-oriented approach" that would "allow the attorney and the expert to engage in free, creative discussions without requiring that they then turn over the fruits of those discussions to the opposing party").[6]

---

[6] Such free and creative discussions might include asking one's expert (1) to assess the strengths and weaknesses of the expert's own opinions, or (2) to assess the strengths and weaknesses of an adverse expert's opinion, or (3) an opinion on a settlement offer. If such legitimate discussions were not protected, parties would be required to hire both a testifying expert and a consulting expert, and the cost of litigation would further increase.

## D.    WAIVER OF A TESTIFYING EXPERT WITNESS'S WORK PRODUCT PROTECTIONS

As mentioned previously, CR 26(b)(5)(A) defines the scope of discovery and work product protections for a testifying expert witness. That rule expressly limits written discovery to (1) the identity of the testifying expert, (2) the subject matter on which the expert is expected to testify, (3) the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and (4) any other information about the expert as may be discoverable under these rules. *See West*, 171 Wn.2d at 404 (contrasting the broader scope of discovery applicable to testifying experts under CR 26(b)(5)(A) with the narrower scope of discovery applicable to nontestifying experts under CR 26(b)(5)(B)).

To the extent Dr. Simons prepared written opinions, expected to testify about those opinions, and disclosed those opinions to plaintiffs' counsel, we presume that Dr. Simons knew that plaintiffs' counsel must disclose those opinions to opposing counsel. From this, we may infer that Dr. Simons relinquished work product protections to such written opinions, and they are discoverable. But to the extent Dr. Simons prepared *draft* opinions, because he will not testify about draft opinions, we cannot infer that he waived work product protections to those draft opinions, and they are not discoverable.

13

E.    ATTORNEY FEES

Plaintiffs request that we award fees on appeal pursuant to RAP 18.1 and that we direct the lower court to award fees. Plaintiffs argue they are entitled to reasonable attorney fees under CR 37(a)(4) and CR 45(c)(1).

An award under CR 37(a)(4) is limited to those types of discovery abuses described by CR 37(a)(2). Those types of discovery abuses do not include issuance of an improperly broad subpoena duces tecum to a nonparty under CR 45.

Under CR 45(c)(1), an attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden and expense on a person subject to that subpoena. Further, a court shall enforce this duty and impose on the party or the attorney in breach of this duty an appropriate sanction, including but not limited to lost earnings and reasonable attorney fees. Here, Dr. Simons is the person subject to the subpoena in question. Plaintiffs do not contend Dr. Simons incurred any attorney fees or lost wages in responding to the subpoena. We, therefore, reject plaintiffs' request for reasonable attorney fees on appeal and below.

## CONCLUSION

We direct plaintiffs to provide to the special discovery master the documents and the privilege log described in his order. We further direct the special discovery master to

14

No. 34573-4-III
*In re Estate of Dempsey*

conduct an in camera review of those documents to determine which documents may be

withheld or redacted consistent with this opinion.

_____
Lawrence-Berrey, J.

I CONCUR:

_____
Pennell, J.

15

No. 34573-4-III

FEARING, C.J. — (dissent)

*The impact of expert witnesses on modern-day litigation cannot be overstated; yet, to some, they are nothing more than willing musical instruments upon which manipulative counsel can play whatever tune desired.* Karn v. Ingersoll Rand, *168 F.R.D. 633, 639 (N.D. Ind. 1996).*

I humbly, but dutifully, dissent. Dr. Michael Wukelic deserves to discover all and complete communications between the Estate of Michael Dempsey's (Estate) testifying expert, Dr. Steven Simons, and the Estate's counsel. Counsel's sharing of her thoughts and strategies with a testifying witness waives the attorney work product doctrine for not only facts supplied, but also opinions and impressions. I would affirm the trial court.

As noted by the majority, the Estate of Michael Dempsey retained medical expert Dr. Steven Simons to testify on its behalf at trial. Counsel for Dr. Michael Wukelic issued a subpoena duces tecum, along with a deposition notice, to Dr. Simons. The subpoena requested that Dr. Simons deliver a copy of all records to a deposition, including all communications and correspondence between Dr. Simons and the Estate's counsel. The subpoena read in part:

2. All letters or correspondence, either written or electronic, whether received or sent by you, concerning Michael Dempsey which are not otherwise part of the record and chart.

Clerk's Papers (CP) at 78. The Estate objected to the subpoena duces tecum on the ground that the request sought confidential and attorney work product privileged information.

The discovery master issued an order compelling production of all documents requested in Dr. Wukelic's motion and denying the Estate's motion to quash. The master reasoned that no attorney-client privilege existed between the Estate's counsel and its expert, Dr. Simons, and the attorney work product doctrine provided no protection since Dempsey intended Simons to testify at trial. The master entered an order that read in part:

> . . . [T]he Court . . . finds that there is no attorney-client privilege between plaintiffs' counsel and Dr. Simons that would protect from disclosure documents, either paper or digital, that have been exchanged between plaintiffs' counsel and Dr. Simons, and that plaintiffs' claim of a "work product" privilege protecting communications between plaintiffs' counsel and Dr. Simons is inapplicable in that Dr. Simons is a testifying expert. . . .
> . . . .
> ACCORDINGLY, the Court . . . grants the defendant Rockwood Clinic's and Dr. Wukelic's Motion to Compel and requires production by plaintiffs' counsel and/or Dr. Simons of all letters or correspondence, either written or electronic, sent to or received from Dr. Simons by plaintiffs' counsel concerning Michael Dempsey.
> The Court further orders production of any and all notes, memos, either written or electronic, prepared by Dr. Simons while performing work on this matter to include handwritten notes concerning conversations with plaintiffs, plaintiffs' counsel, or other healthcare providers or review of

2

records, tax records, school records and any other literature pertinent to the case.

The Court further Orders production of all billing information in the possession of Dr. Simons or sent by Dr. Simons concerning Dr. Simons' work performed as an expert in the instant lawsuit

. . . .

Finally, the Court orders plaintiffs to prepare and to serve and file a privilege log delineating specifically all letters, correspondence or other documents, either written or electronic, whether received or sent by Dr. Simons concerning Michael Dempsey to include the date of each such described communication, the author thereof: as well as a list delineating each and every document, not previously disclosed, which plaintiffs claim is protected by any privilege which delineation should include the date of such document, the author of such document, and the type of privilege being asserted for each document identified.

CP at 188-90.

The Estate asked the superior court judge to review the special discovery master's order. The trial court affirmed the master. The court order reads, in relevant part: the court "AFFIRMS, in all respects, the . . . Order of the Discovery Master." CP at 295. We accepted discretionary review of the trial court's order to address the sole question of whether Dr. Steven Simons must deliver, at his deposition, correspondence with the Estate's counsel.

I should first determine the parameters of the question presented to us. On appeal, the Estate of Michael Dempsey refers to the subpoena duces tecum directed at Dr. Steven Simons as violating the attorney-expert communication privilege. Nevertheless, the Estate cites no authority that recognizes such a communication privilege outside the context of the attorney work product doctrine, and the Estate cites no authority declaring

3

that an attorney-expert communication privilege blooms from the attorney-client privilege. FED. R. CIV. P. 26(b)(4)(C) references "attorney-expert communications." Nevertheless, Washington's CR 26 analog admits no such phrase. Therefore, this court should only address whether the attorney work product doctrine shields disclosure of any correspondence between the Estate's counsel and Steven Simons. I note that the question of whether conversations between the Estate's attorney and Dr. Steven Simons deserve protection does not come before us.

Since the trial court affirmed the discovery master's ruling, we consider the propriety of the master's ruling. The majority and I note an anomaly in the ruling. The discovery master's order rejected the application of the attorney-client privilege and the attorney work product doctrine and required Dr. Steven Simons to produce all records concerning the case, including communications with the Estate of Michael Dempsey's attorney. Nevertheless, at the same time the master impliedly allowed withholding of production of some records as long as counsel prepared a privilege log. Presumably the master would then review the log or the records listed in the log to determine the applicability of the attorney work product doctrine or the attorney-client privilege. A privilege log serves no purpose other than to list records being withheld, and completion of a log conflicts with a requirement to produce all records. We lack any knowledge of the Estate preparing a privilege log.

4

On discretionary review, the Estate of Michael Dempsy claims that the trial court improperly ordered the disclosure of all attorney-expert communications and thereby violated civil rules that protect attorney work product. But the argument may be based on a false assumption that the trial court ordered disclosure of all records to the defense before a review of the records by the master. Still the majority and I proceed with answering the question of whether Dr. Steven Simons must submit to the defense copies of the correspondence between counsel and Simons.

We have no information about any communications between the Estate of Michael Dempsey's attorney and expert Steven Simons. A privilege log would have assisted us. I assume the existence of at least one written message between counsel and the testifying expert or else the Estate would raise no objection and respond that no such communications exist. Still we know not how many messages exist or the broad parameters of the nature of the communications. The law sometimes distinguishes between facts shared by an attorney with an expert witness, on the one hand, and opinions or strategy revealed by counsel to the testifying expert, on the other hand. *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010); *Frontier Refining Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 704 n.12 (10th Cir. 1998). We lack knowledge as to whether communications between the Estate's attorney and Dr. Simons fall into only one category, and, if so, which category, or if the information shared fills both categories. Contrary to the majority, I would hold that the same rule applies to both categories.

5

The majority identifies as a second issue the discoverability of preliminary drafts of an expert report prepared by Dr. Steven Simons. Nevertheless, the record contains no mention of any report drafts. We should not address a question not before us.

Having discussed the parameters of this court's review, I now address the merits of the appeal. This court should adopt a rule requiring a party and the party's testifying witness to disclose all written communications between the party's counsel and the witness for three reasons. First, the language of CR 26 supports such a rule. Second, federal case law decided during a time that FRCP read similarly to CR 26 bolsters such a dictate. Third, public policy behind garnering the truth compels such a principle. I address each in such order.

## CR 26

Washington Civil Rule (CR) 26 catalogs general rules of discovery in civil matters. CR 26(b)(1) enables parties to obtain discovery regarding any matter relevant to the litigation that is not protected by privilege. The work product privilege provides a qualified immunity from this general discovery rule. *Harris v. Drake*, 152 Wn.2d 480, 486, 99 P.3d 872 (2004). CR 26(b) memorializes this immunity. The rule declares in part:

> (4) *Trial Preparation: Materials. Subject to the provisions of subsection (b)(5) of this rule*, a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including a party's

6

attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of such party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

(Some emphasis added.)

CR 26 codifies the common law attorney work product doctrine as delineated by the seminal United States Supreme Court decision of *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385, 91 L. Ed. 451 (1947). According to *Hickman*, the work product doctrine serves many purposes. If the opponent could see an attorney's notes containing thoughts and impressions, an attorney will hesitate to keep such notes, leading to inefficiencies in the practice of law. *Hickman v. Taylor*, 329 U.S. at 510-11. A lawyer must work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Much of what the attorney places in writing would remain unwritten and the attorney's thoughts would not remain his own. A contrary rule would lead to inefficiency, unfairness, sharp practices, and a demoralizing effect on the profession. The interests of the clients and the cause of justice would suffer.

Based on the language of CR 26(b)(4), the Estate of Michael Dempsey may be asserting on appeal a qualified privilege with regard to facts shared by its counsel with a testifying expert, which privilege requires the defense to establish a substantial need and

7

undue hardship before reviewing the communication. The Estate may also be asserting

an absolute privilege that blankets counsel's mental impressions, opinions and legal

theories imparted to the expert witness. Nevertheless, the opening clause of CR 26(b)(4)

reads: "Subject to the provisions of subsection (b)(5) of this rule." This clause declares

that the attorney work product doctrine remains subject to the principles of discovery

implanted in CR 26(b)(5). *Harris v. Drake*, 152 Wn.2d at 486. The text of the rule

informs us that CR 26(b)(4) does not apply to situations falling within CR 26(b)(5). *In re

Firestorm 1991*, 129 Wn.2d 130, 137, 916 P.2d 411 (1996). Under the first clause of CR

26(b)(4), CR 26(b)(5) tops all provisions of CR 26(b)(4), even the portion of CR 26(b)(4)

that shields the mental impressions, conclusions, opinions, or legal theories of an attorney

from disclosure.

CR 26(b)(5) addresses discovery from an expert witness. The rule proclaims:

> *Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subsection (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
> (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, to state the substance of the facts and opinions to which the expert is expected to testify *and a summary of the grounds for each opinion, and to state such other information about the expert as may be discoverable under these rules.* (ii) A party may, subject to the provisions of this rule and of rules 30 and 31, depose each person whom any other party expects to call as an expert witness at trial.
> (B) A party may discover facts known or opinions held by an expert who is not expected to be called as a witness at trial, only as provided in

8

> rule 35(b) or upon a showing of exceptional circumstances under
> which it is impracticable for the party seeking discovery to obtain
> facts or opinions on the same subject by other means.

(Some emphasis added). The parties assume that Dr. Steven Simons will testify at any trial, and so I presume that Simons qualifies as a testifying expert. Thus, CR 26(b)(5)(A), not (5)(B), controls.

CR 26(b)(5)(A) allows discovery of facts known and opinions held by experts acquired or developed in anticipation of litigation or for trial. Discovery from testifying experts permits the adverse party to prepare for an effective cross-examination and rebuttal. 8A CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 2029 (3d ed. & Supp. 2017). Unlike discovery requests made pursuant to CR 26(b)(4), the requesting party need not fulfill the substantial need or undue hardship requirements when seeking information from a testifying expert. *In re Detention of West*, 171 Wn.2d 383, 408, 256 P.3d 302 (2011).

CR 26(b)(5)(A) strives to make trials fairer and improve their truth finding function by granting pretrial access to the other side's expert witnesses in order to prepare for cross-examination and rebuttal. *In re Detention of West*, 171 Wn.2d at 404. Among other rights, the rule grants parties the right to "depose each person whom any other party expects to call as an expert witness at trial" subject to other rules found in CR 26, as well as CR 30 and 31. CR 26(b)(5)(A)(ii). CR 30(b)(1) permits service of a subpoena duces tecum on the expert. CR 26(b)(5), CR 30, and CR 31 place no limits on the documents

9

that the opposing party may subpoena from the testifying expert witness.

CR 26(b)(5) does not expressly demand that an expert disclose the content of communications to and from hiring counsel. Nevertheless, the rule requires disclosure of a summary of grounds for each opinion and other "discoverable" "information about the expert." CR 26(b)(5)(A)(i). The majority ignores the second category of information. Discoverable information should include the strategies and opinions shared by counsel with the expert since this information carries high relevance to the credibility of the witness.

CR 26(b)(5) also demands that the expert submit to a deposition. During a deposition, counsel enjoys wide latitude when posing questions. For example, opposing counsel may not object based on relevancy. *Johnson v. Jones*, 91 Wn. App. 127, 134, 955 P.2d 826 (1998). Under CR 26, a party may discover any matter, not privileged, that might lead to the discovery of admissible evidence. *Bushman v. New Holland Div. of Sperry Rand Corp.*, 83 Wn.2d 429, 433-34, 518 P.2d 1078 (1974). The language of CR 26(b)(5) and principles of discovery strongly imply, if not dictate, that the expert must divulge all information provided to him or her when formulating opinions. The correspondence that an expert witness reviews when forming his opinions bear relevance to the suit and thus proffer fodder for deposition questioning. If opposing counsel may question the witness about sources reviewed when forming opinions, counsel should be free to see the written sources considered by the witness.

10

The majority insists that CR 26(b)(4), not CR 26(b)(5), applies because the issue on appeal only concerns an attorney's correspondence. This analysis ignores the sending of the attorney's correspondence to a third person who will testify and that CR 26(b)(5) controls disclosure of documents in the hands of this expert witness. Subsection (5) admits no privilege for documents in the possession of the testifying expert. Subsection (4) would shield the attorney from the need to produce the correspondence, but the defense sought the records from the witness, not from counsel.

No Washington decision directly addresses whether an opposing party may garner correspondence between a testifying expert and the counsel hiring the expert. A Washington decision in another context, however, directed disclosure of even the mental impressions and theories, placed on paper, of an attorney. In *Pappas v. Holloway*, 114 Wn.2d 198, 212, 787 P.2d 30 (1990), our state high court noted that the attorney work product doctrine does not afford absolute immunity from disclosure of attorney opinions and thoughts. The high court required a party suing one attorney for malpractice in representing the party during earlier litigation to disclose the thought processes and opinions of other attorneys who assisted in litigation on behalf of the client. The court applied the rule that, when material sought to be discovered is central to a party's claim or defense, an exception to the strict rule created by the attorney work product doctrine under CR 26(b) should apply and discovery should be allowed.

I would follow the teaching of *Pappas v. Holloway* and the rationale behind full

11

discovery of the basis on which a testifying expert grounds his or her opinion. I would hold that a testifying expert must produce to the opposing party any correspondence between an attorney and the expert. The testifying expert uses or at least reviews the correspondence in the preparation of his opinions. The opinions of the expert necessarily impact the litigation and become central to a claim or defense. Fairness dictates that the opponent, and eventually the jury, know what information the attorney shared with the testifying expert.

The Estate of Michael Dempsey and the majority rely on *In re Detention of West*, 171 Wn.2d 383 (2011). The majority writes that *Detention of West* buffers attorney work product shared with a testifying expert. Nevertheless, *West* safeguards reports of a consulting expert, not a testifying expert.

In *Detention of West*, one charged with being a sexually violent predator (SVP) sought discovery of expert reports prepared by the State's testifying expert in other SVP prosecutions. The defendant did not seek production of communications between the Attorney General's Office and its testifying expert. The high court held that the State need not disclose the reports prepared by the expert in cases, in which the expert never testified. The attorney work product doctrine still protected those reports despite the cases ending. The high court held that the State must disclose the reports prepared by the expert in cases, in which the expert testified. The court noted that CR 26(b)(5)(A) does

12

not require a showing of substantial need or exceptional circumstances to obtain

information from a testifying expert. *Detention of West* erodes the majority's holding.

## FED. R. CIV. P. 26

In 2010, FED. R. CIV. P. 26 was amended to clarify what information the opposing

party may extract from a testifying expert. Before the amendments, former FED. R. CIV.

P. 26(a)(2)(B) (1993) read:

> (B) *Witnesses Who Must Provide a Written Report.* Unless
> otherwise stipulated or ordered by the court, this disclosure must be
> accompanied by a written report—prepared and signed by the witness—if
> the witness is one retained or specially employed to provide expert
> testimony in the case or one whose duties as the party's employee regularly
> involve giving expert testimony. The report must contain:
> (i) a complete statement of all opinions the witness will express and
> the basis and reasons for them;
> (ii) *the data or other information considered by the witness* in
> forming them;
> (iii) any exhibits that will be used to summarize or support them.

(Emphasis added.) The 2010 amendments changed FED. R. CIV. P. 26(a)(2)(B)(ii) to

read: "the facts or data considered by the witness . . . ." More importantly, the 2010

amendments added a new FED. R. CIV. P. 26(b)(4)(C), which declares:

> (C) *Trial-Preparation Protection for Communications Between a
> Party's Attorney and Expert Witnesses.* Rules 26(b)(3)(A) and (B) protect
> communications between the party's attorney and any witness required to
> provide a report under Rule 26(a)(2)(B), regardless of the form of the
> communications, except to the extent that the communications:
> (i) relate to compensation for the expert's study or testimony;
> (ii) identify facts or data that the party's attorney provided and that
> the expert considered in forming the opinions to be expressed; or
> (iii) identify assumptions that the party's attorney provided and that

13

the expert *relied on* in forming the opinions to be expressed.

(Emphasis added.)

The majority fails to analyze the content of FED. R. CIV. P. 26 before the 2010 amendments. Before 2010, FED. R. CIV. P. 26(b)(2) had similarities and differences with CR 26(b)(5), as the state rule now reads and then read. The former allowed discovery of all information considered by the expert witness, while the latter requires the expert to state such other information as may be discoverable. Nevertheless, the state rule should at least be as broad as the federal rule, since the rule implies discovery of all information that may lead to relevant evidence.

When a state rule reads identically to its federal rule counterpart, analyses of the federal rule by federal courts provide persuasive guidance to the application of our comparable state rule. *Soter v. Cowles Publishing Company*, 162 Wn.2d 716, 739, 174 P.3d 60 (2007). This same principle should apply when the state rule provides broader discovery.

The prevailing view under federal law, until the 2010 amendments to FED. R. CIV. P. 26, stated that disclosure of attorney work product to a party's expert, who considered the information in formulating his or her opinion, waived any work product protection. *Johnson v. Gmeinder*, 191 F.R.D. 638, 641 (D. Kan. 2000). Disclosure and consideration of either fact or attorney opinion work product to a testifying expert resulted in waiver. *See B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York*, 171 F.R.D. 57

14

(S.D.N.Y. 1997); *United States v. City of Torrance*, 163 F.R.D. 590 (C.D. Cal. 1995). The majority of federal decisions held that when an attorney provided any type of protected or privileged materials to a testifying expert who considered them in forming his or her opinions, the documents were no longer privileged and must be produced to the other parties to the lawsuit. *PacifiCorp v. Northwest Pipeline GP*, 879 F. Supp. 2d 1171, 1213 n.21 (D. Or. 2012); *Lamonds v. General Motors Corp.*, 180 F.R.D. 302, 305 (W.D. Va. 1998); *Musselman v. Phillips*, 176 F.R.D. 194, 202 (D. Md. 1997); *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York*, 171 F.R.D. at 66; *Furniture World, Inc. v. D.A.V. Thrift Stores, Inc.*, 168 F.R.D. 61, 62 (D.N.M. 1996); *Karn v. Ingersoll Rand Co.*, 168 F.R.D. at 639-40. The cases recognized that even the *absolute* immunity provided for opinion work product must cede to the sweeping rule of disclosure. *Johnson v. Gmeinder*, 191 F.R.D. at 646-47. Documents and information provided to a testifying expert in connection with opinions and testimony were discoverable by the opposing party, whether or not the expert relied on the documents in preparing an expert report. *In re Pioneer Hi–Bred International, Inc.*, 238 F.3d 1370, 1375-76 (Fed. Cir. 2001).

The Estate of Michael Dempsey does not now, but might in the future, argue that Dr. Steven Simons never considered any correspondence from counsel when formulating his expert opinions or that Dr. Simons did not consider a portion of a letter or message when fashioning his conclusions. I would still hold that the Estate must disclose all

15

sections of all correspondence. I consider unworkable any rule that allows a party to withhold some of the correspondence, between counsel and the testifying expert, on the theory that the correspondence lacks importance or the expert ignored information in the correspondence.

Under the attorney work product doctrine rules in federal court before 2010, courts generally required that, in order for waiver to occur, the work product must have been "considered" by the expert in formulating his or her opinions. *Lamonds v. General Motors Corp.*, 180 F.R.D. at 305; *Musselman v. Phillips*, 176 F.R.D. at 201; *Karn v. Ingersoll Rand Co.*, 168 F.R.D. at 635. These cases coincided with the language of FED. R. CIV. P. 26(a)(2)(B), which required and still requires an expert to prepare a report and identify in the report all data or other information "*considered* by the witness in forming the opinions." The rule does not require that the expert "rely" on the work product in formulating his or her opinion. *Lamonds v. General Motors Corp.*, 180 F.R.D. at 306. The term "considered" invokes a broader spectrum of thought than the phrase "relied on" that requires dependence on the information. *Lamonds v. General Motors Corp.*, 180 F.R.D. at 306; *Johnson v. Gmeinder*, 191 F.R.D. at 648.

FED. R. CIV. P. 26(a)(2)(B), either now or in its pre-2010 language, does not define the term "considered," and federal courts have struggled to define the term. One court has held that the term means "take into account" the document or other material. *Karn v. Ingersoll Rand*, 168 F.R.D. at 635. Applying that definition, one court concluded that the

16

work product at issue had been "considered" when the experts reviewed the documents in connection with forming their opinions. *Karn v. Ingersoll Rand*, 168 F.R.D. at 635. Another court held that the expert "considered" a document if the expert received and read the documents before forming his or her expert opinion. *Lamonds v. General Motors Corp.*, 180 F.R.D. at 306.

Asking a court to determine whether an expert has "considered" certain materials, as that term is commonly used, would require the court to explore the expert's subjective mental processes and risks the creation of an unwieldy rule that would provide uncertainty as to the protected status of work product or other privileged materials. *Johnson v. Gmeinder*, 191 F.R.D. at 648-49. Such a rule would also permit cagy responses from experts as to the importance of a document in formulating an opinion. Therefore, one court has ruled that, when the expert read or reviewed the privileged materials before or in connection with formulating his or her opinion, the expert will be deemed to have "considered" those materials for purposes of FED. R. CIV. P. 26(a)(2)(B). *Johnson v. Gmeinder*, 191 F.R.D. at 648-49.

## Public Policy

Several related policy reasons support a rule that favors production of any information that the expert reviews. First, the adverse party must obtain the materials or documents that a testifying expert considers in order to discern the extent to which the opinion of the expert may have been influenced by counsel. *B.C.F. Oil Refining, Inc. v.*

17

*Consolidated Edison Co. of New York*, 171 F.R.D. at 66; *Karn v. Ingersoll Rand*, 168 F.R.D. at 638. Second, without the materials, the opposing party will be denied the opportunity to a full and fair cross-examination of the expert witness. Third, the fact-finder is entitled to evaluate potential biases in the witnesses' testimony revealed in communications with counsel. *PacifiCorp v. Northwest Pipeline GP*, 879 F. Supp. 2d at 1213.

Proper cross-examination of an expert witness requires that the adverse party know the facts underlying the expert's opinions, including whether the expert made an independent evaluation of those facts or whether he instead adopted the opinions of the lawyers that retained him. *Elm Grove Coal Co. v. Director, Office of Workers' Compensation Programs*, 480 F.3d 278, 301 (4th Cir. 2007); *Musselman v. Phillips,* 176 F.R.D. at 200. The weight accorded to an expert's opinion must vary in accordance with the expert's competence and knowledge. *Occulto v. Adamar of New Jersey, Inc.*, 125 F.R.D. at 615-16. An expert who can be shown to have adopted the attorney's opinion as his own stands less tall than an expert who engaged in painstaking inquiry and analysis before arriving at an opinion. *Occulto v. Adamar of New Jersey, Inc.*, 125 F.R.D. at 616.

Foreign state decisions endorse my dissent. *DeLuca v. State Fish Co.*, 217 Cal. App. 4th 671, 158 Cal. Rptr. 3d 761 (2013); *Gall v. Jamison*, 44 P.3d 233 (Colo. 2002); *State ex rel. American Economy Insurance Co. v. Crawford*, 75 S.W.3d 244 (Mo. 2002); *Emergency Care Dynamics, Ltd. v. Superior Court*, 188 Ariz. 32, 932 P.2d 297 (Ct. App.

1997). *Gall v. Jamison* presents a thorough examination of other decisions and the competing rationales behind enforcing the attorney work product doctrine and demanding full disclosure. The Colorado court addressed, in a medical malpractice case, whether a written communication from an attorney to a retained testifying expert was discoverable notwithstanding the attorney's claim of work product privilege. The court answered in the affirmative.

In *Gall v. Jamison*, the Colorado court applied the rule that privileged materials lose their privileged status when disclosed to, and considered by, a testifying expert. The court also noted that a party waives the work product privilege when otherwise protected materials are used to influence and shape testimony. Materials and information shared with a retained expert will affect her credibility. The adverse party must be permitted to inspect the shared documents in order to effectively cross-examine the expert witness on the degree to which her opinion was informed by the retaining counsel's disclosure of limited facts, highlighting of particular facts, or emphasis on certain studies and scholarly literature. According to the Colorado court, strong public policy considerations support a rule favoring broad disclosure. A bright-line rule requiring disclosures of all attorney-expert communications promotes efficiency, fairness, and the truth-seeking process. Requiring trial courts to otherwise review every expert communication in camera to determine the appropriate degree of disclosure would foment needless discovery battles, undercut the truth-seeking principles of the rules of civil procedure, and waste scarce

19

judicial resources. A bright-line approach gives parties notice of precisely which materials will be discoverable in every case, thereby reducing the number of discovery disputes. The court concluded that, when an expert has read or reviewed the privileged materials before or in connection with formulating his or her opinion, the expert must share the materials with the opposing party.

Often issues in civil litigation divide the plaintiffs' bar from the defense bar. The question on appeal should unify both bars. Both sides benefit from a rule that ensures that the opinions of an expert are truly his or her opinions and not the opinions of hiring counsel. Truth more likely prevails.

To illustrate the dangers of the majority's holding, I attach a hypothetical letter between a hiring attorney and an expert witness. Although the letter exaggerates, the letter illustrates the mischief in shielding communications. To show that the question on appeal should unite the plaintiffs' and defense bar, I switch the function of counsel and assign the hiring attorney the role of defense counsel.

The majority asserts that the hypothetical letter does not warrant protection if the expert employs the terminology or catchphrases contained in the letter. The majority also writes that a letter from counsel to the expert does not deserve protection if the letter improperly directs the expert's opinions. Nevertheless, the majority cites no decision to support either of these two instances of a limited waiver of the attorney work product doctrine. Nor does the major provide any guidelines for a lower court to determine when

20

counsel's letter "improperly directs" the expert's opinions. One wonders how opposing counsel will know if the expert employs the terminology suggested by a letter when opposing counsel is not privy to the letter. One wonders if the majority suggests that a trial court or discovery master must always review the letter between counsel and the expert after the expert's testimony in order to discern whether the expert borrowed from the letter. My hypothetical letter does not direct the expert as to how to testify. The letter hopes the expert will share the attorney's views and opinions, but the expert remains free to adopt his own opinions. The majority's shielding of the sharing of opinions shared by counsel fails to note the ability of an attorney to impliedly guide the expert to form certain opinions, without tacitly so directing. The sharing of opinions by itself, without any direct encouragement, encourages the expert to adopt the opinions.

Because I would hold that the Estate of Michael Dempsey must produce all correspondence between Dr. Steven Simons and the Estate's counsel, I would conclude that no privilege log need be prepared. I also note that counsel remains free to openly discuss theories and strategy with a nontestifying expert, sometimes referred to as a consulting expert, without waiving the attorney work product doctrine.

I RESPECTFULLY DISSENT

_Fearing, J._
_____
Fearing, C.J.

21

APPENDIX

December 7, 2017

Dr. Haier Gunn
88 Narrow Street
Suite 1313
New York, New York 10004

  Re: Bernard Rommel v. City of New Paris
  Orleans Parish Cause No. 17-6-00666

Dear Dr. Gunn:

As indicated over the phone, I wish to hire you as an expert witness in the above case, in which Bernard Rommel sues the city of New Paris. I represent New Paris. I ask that you review the medical records of Bernard Rommel and conduct an independent medical examination of him. I anticipate your testifying at the trial scheduled for the week of September 10, 2018.

On October 31, 2016, at 3 p.m., Bernard Rommel drove his car westbound on Amiens Avenue, in New Paris, when his car was struck by a car driven southbound by Erwin Montgomery on Mayonnaise Street. The collision occurred at the intersection of Amiens Avenue and Mayonnaise Street. A stop sign on Mayonnaise Street controlled Montgomery's path. Montgomery claims he stopped at the sign. He further claims he could not see the approaching car because a fence, constructed and owned by the city of New Paris at the adjoining city park, obstructed his view. At the time of the accident, Rommel travelled at 25 mph. Montgomery had accelerated to 5 to 10 mph.

As a result of the collision, Bernard Rommel alleges he suffered abrasions and soft tissue injuries. More importantly, he claims that he has chronic lower back pain, upper back pain, and neck soreness. He complains of tingling radiating into his left leg and his right arm. Rommel further claims that he can no longer work as a carpenter or perform other manual labor.

My mental impressions are that this low impact accident could not have caused the injuries about which Bernard Rommel complains. I believe that soft tissue injuries are not real. At trial, my legal theories will include arguing that Rommel merely uses the accident as an excuse to feed his opioid dependency. I conclude that Rommel also uses

22

the accident as a justification to forgo employment. I opine that Rommel's only disability is "compensation syndrome." He wants money and plenty of it.

By the way, I am not expressly or impliedly suggesting to you what opinions to adopt. Instead, a primary legal strategy of mine is for you to adopt on your own and to testify to all of my mental impressions, conclusions, opinions, and legal theories without the jury knowing that I shared with you these thoughts shielded by the attorney work product doctrine.

I will shortly forward to you Bernard Rommel's medical records and contact your assistant to schedule the independent and unbiased medical examination.

Respectfully Yours,


George D. Fence